# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3002EA

_____

United States of America,         *
                                 *
           Appellee,            *
                                 *   On Appeal from the United
      v.                        *   States District Court
                                 *   for the Eastern District
                                 *   of Arkansas.
Daniel Howard Harmon, Jr.,     *
                                 *
           Appellant,        *

_____

Submitted: January 15, 1999

Filed: January 25, 1999

_____

Before RICHARD S. ARNOLD and WOLLMAN, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

Daniel Harmon, Jr., appeals his conviction on four counts: two counts of use of a communications facility (in this case, a telephone) to commit a drug felony, in violation of 21 U.S.C. § 843(b), one count of possession of methamphetamine with the intention of distributing it, in violation of 21 U.S.C. § 841(a)(1), and one count of

_____

[1]The Hon. John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

attempting to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

The District Court[2] sentenced Mr. Harmon to imprisonment for three years and one month, two and one-half years for the four counts of conviction themselves, plus an enhancement of seven months because the crimes were committed while the defendant was on release before being sentenced on a previous conviction. See 18 U.S.C. § 3147. The total sentence, 37 months, is to be served after defendant has completed his sentence on the previous offense. Mr. Harmon was also given a term of three years on supervised release and instructed to pay a $400.00 special assessment ($100.00 on each count).

Defendant makes two arguments on appeal. First, he contends that the evidence was insufficient to support the jury's verdict. The first two counts are based on telephone conversations between the defendant and his girlfriend. These conversations were recorded with the girlfriend's consent and were introduced in evidence at the trial. The girlfriend testified that each conversation had to do with Mr. Harmon's agreeing to meet her and another woman the next morning, and to bring with him methamphetamine for the three of them to use together. The argument on appeal stresses the fact that neither methamphetamine nor any drugs as such were mentioned by name during the calls. Instead, the conversation referred vaguely to Mr. Harmon's efforts, ultimately successful, to make arrangements to secure something that his girlfriend wanted him to bring the next day. In the context of the previous relations between the woman and the defendant, the details of which need not be recounted, it was entirely reasonable for the jury to infer that the conversations were about methamphetamine. The girlfriend herself so testified.

_____

[2]The Hon. Henry Woods, United States District Judge for the Eastern District of Arkansas.

-2-

As to the two substantive drug counts, possession with intent to distribute and attempt to distribute, the evidence was as follows. On the morning after the calls, Mr. Harmon arrived at his girlfriend's apartment. Officers were waiting for him outside. Immediately after spotting them, the defendant ran and jumped in a pool near the apartment. He crouched down in the pool and churned the water with his arms. He then emerged from the pool. A Bic pen and tinfoil were found on his person. The tinfoil contained methamphetamine residue. No other methamphetamine was found. A chemist testified that methamphetamine dissolves in water.

It was reasonable for the jury to infer from this evidence that the defendant arrived at the apartment with methamphetamine, intending to give it to his girlfriend and the other woman, and that he jumped in the pool to destroy the evidence when he saw the officers. The defendant's girlfriend identified the pen as a tool used in smoking methamphetamine. The phone calls the previous night and the defendant's conduct the following morning amply justify the inference that he agreed on the phone to procure drugs and that he showed up the next day with the intention of giving them to the two women. His appearance at the apartment house with the drugs is a concrete step towards the completion of the crime of distribution, and therefore qualifies as an attempt.

Defendant's second argument has to do with the fact that the District Court, in reading the indictment to the jury panel before jury selection began, inadvertently read a portion of a paragraph captioned "ENHANCEMENT." The District Court first read the text of the four counts charged. This is a customary procedure, designed to let the potential jurors know the nature of the case, in order, among other reasons, to enable them to answer questions about their acquaintance with the parties or the evidence. The Court then continued as follows:

> The above offenses were committed at a time the defendant
> had been released pending . . . well, I am not going to read

the enhancement portion of this. I am just going to read the counts.

Tr. 7. Counsel for the defendant then moved for a mistrial, which was denied.

The full text of the paragraph, if the District Court had read it all, would have informed the jury that the government was claiming that Mr. Harmon committed the four offenses charged while on release before being sentenced in a previous case. The Court realized almost immediately that there was no need to read this portion of the indictment to the jury, since it concerned only a sentencing factor, rather than an element of an offense on which the jury would have to make a finding. In addition, the Court no doubt appreciated that it might prejudice the defendant for the jury to know that he had been previously convicted of something. So the Court did well to stop when it did. Was it error to refuse a mistrial? We think not. Our review of a decision of this kind is for abuse of discretion, and we defer to the judgment of the able District Judge that the incident was not serious enough to justify aborting the trial. The Court had prefaced its reading of the indictment with an admonition to the jury that the indictment was not evidence, and that no weight should be given to the matters contained in it. Tr. 5. So a cautionary instruction of sorts had already been given. Counsel for the defendant did not request a further cautionary instruction, or any relief other than the drastic action of declaring a mistrial. The members of the jury panel were already aware that a previous trial had been held, because counsel for defendant had herself mentioned this fact, in the course of describing to the Court what issues might likely arise during voir dire. Tr. 3. There was no abuse of discretion here.

Affirmed.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.